1  JULIO J. RAMOS (SBN. 189944)
2  ramosfortrustee@yahoo.com
   LAW OFFICES OF JULIO J. RAMOS
3  35 Grove Street, Suite 107
   San Francisco, California 94127
4  Telephone:      (415) 948-3015
   Facsimile:      (415) 469-9787
5
6  STEVEN M. NUÑEZ (SBN. 185421)
   steve@wardhagen.com
7  WARD & HAGEN, LLP
   440 Stevens Ave., Ste. 350
8  Solana Beach, CA 92075
   Telephone:      (858) 847-0505
9  Facsimile:      (858) 847-0105

10 Attorneys for Plaintiffs MANUEL CABRERA & MILA CABRERA

11

12 **UNITED STATES DISTRICT COURT**

   **NORTHERN DISTRICT OF CALIFORNIA**
13

14 MILA CABRERA and MANUEL          ) Case No. 3-11-cv-04869-(SI)
   CABRERA  individually and behalf of the )
15 general public                    ) **PLAINTIFFS' MEMORANDUM IN**
                                      ) **OPPOSITION TO DEFENDANT'S**
16             Plaintiffs,            ) **12(b)(6) MOTION TO DISMISS THE**
                                      ) **FIRST AMENDED COMPLAINT**
17 vs.                                )
                                      )
18 COUNTRYWIDE FINANCIAL,            ) Date: November 2, 2012
   COUNTRYWIDE HOME LOANS INC.,      ) Time: 9:00 a.m.
19 DBA AMERICA'S WHOLESALE           ) Location: Courtroom 10, 19th Flr.
   LENDER, COUNTRYWIDE BANK, FSB,    )
20 BANK OF AMERICA INC.              ) Complaint Filed: September 30, 2011
                                      ) Trial Date: Not Set
21             Defendants,            )
                                      )
22                                    )
                                      )
23                                    )

24

25

26

27

28

   PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION
   TO DISMISS

# **TABLE OF CONTENTS**

I.      INTRODUCTION.................................................................................1

II.     THE SAC'S  MATERIAL ALLEGATIONS...............................................3

III.    LEGAL STANDARDS............................................................................6

IV.     ARGUMENT.......................................................................................8

      A.     PLAINTIFFS' CLAIMS ARE NOT PRECLUDED BY THE STATUTE OF
           LIMITATIONS BECAUSE OF FRAUDULENT
           CONCEALMENT.....................................................................8

      B.     A RICO CAUSE OF ACTION ACCRUES WHEN A PLAINTIFF KNOWS
           OR SHOULD HAVE KNOWN OF AN INJURY...............................10

      C.     THE DELAYED DISCOVERY RULE APPLIES TO UCL CLAIMS.........11

      D.     THE ECOA CLAIM IS TIMELY BECAUSE COUNTRYWIDE AGREED
           TO TOLL THE STATUTE OF LIMITATIONS WITH RESPECT TO 2007
           AND 2009 ECOA VIOLATIONS ...............................................11

      E.     RICO CLAIMS BASED ON THE BAIT AND SWITCH SCHEME ARE
           APPROPRIATE UNDER THE FACTS OF THIS CASE.......................12

      F.     THE ELEMENTS TO SATISFY RICO PLEADING ARE PRESENT IN THE
           FAC.....................................................................................13

      G.     THE UCL CLAIMS ARE BASED IN PART ON THE UNFAIRNESS OF
           "DUAL TRACKING" FORECLOSURES.......................................14

      H.     FEDERAL RULE OF CIVIL PROCEDURE 9(B) DOES NOT APPLY TO
           PLAINTIFFS' UCL CLAIMS BECAUSE THEY DO NOT SOUND IN
           FRAUD..................................................................................15

      I.     THE ECOA CLAIM MAY BE PREMISED ON DISPARATE
           IMPACT.................................................................................17

      J.     MRS. CABRERA HAS STANDING IN THIS CASE...........................18

V.     CONCLUSION.....................................................................................18

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION
TO DISMISS

**TABLE OF AUTHORITIES**

**CASES:**

*Allwaste, Inc. v. Hecht,* 65 F.3d 1523, 1527 (9th Cir. 1995)…………………………………13

*Avagyan v. Holder,* 646 F.3d 672, 678 (9th Cir. 2011)………………………………….....9

*Beck v. Prupis,* 529 U.S. 494, 146 L. Ed. 2d 561, 120 S. Ct. 1608, 1616 (2000)……………....1

*Bell Atlantic Corp. v. Twombly*, __ U.S. __,127 S. Ct. 1955, 1974, 167 L. Ed. 2d. 929 (2007)…………………………………………………………………………………………7,10

*Beneficial Standard Life Ins. Co. v. Madariaga,* 851 F.2d 271, 275 (9th Cir. 1988)…………10

*Bly-Magee v. California,* 236 F.3d 1014, 1019 (9th Cir. 2001)………………………….....7

*Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639 (2008)………………………....13,18

*Broberg v. Guardian Life Insurance Co. of America,* (2009) 40 Cal.4th 623, 639 (Ct. App. 2nd Dist.)…………………………………………………………………………………………11

*Cervantes v. City of San Diego,* 5 F.3d 1273, 1277 (9th Cir.1993)………………….………11

*Cetel v. Kirwan Financial Group, Inc.,* 460 F.3d 494, 507 (3d Cir. 2006)……………………9

*Committee on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211-12 n.11, 197 Cal. Rptr. 783 (1983)…………………………………………………………………15

*Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*, 4 Cal. App. 4th 963, 975, 6 Cal. Rptr. 2d 193 (1992)…………………………………………………………………....………16

*Emery v. American General Finance Inc.*, 71 F.3d 1343 (7th Cir. 1995) the 7th Circuit……..12

*Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2008)……....6,7

*Germain v. J.C. Penny Co. et. al.,* 2009 WL 1971336*3*4………………………………...7

*Grimmett v. Brown,* 75 F.3d 506, 510 (9th Cir. 1996)…………………………………….1

*Grimmett v. Brown*, 75 F.3d 506, 511 (9th Cir. 2005)…………………………...………10,11

*Gruen v. Van Ru Credit Corp.,* 2009 U.S. Dist. Lexis 60396 (N.D. Cal. July 15, 2009)….….15

*H.J., Inc. v. Northwestern Bell Telephone Co.,*492 U.S. 229, 241-42, (1989)………………11

*Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986)…………………………6

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)…………………………………………...……6

PLAINTIFFS MEMORANDUM IN OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO DISMISS

*Huyhn v. Chase Manhattan Bank,* 465 F.3d 992, 1003-1004 (9th Cir. 2006)………………….9

*In re Countrywide Financial Corp. Marketing and Sales Practice Litigation,* 601 F,Supp. 2d 1201, 1215 (S.D. Cal. 2009)………………………………………………..……………9,12

*In re Mattel, Inc.,* 588 F. Supp. 2d 1111, 1118 (C.D. Cal. 2008)…………………………15

*In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 315 (8th Cir. 1997)……………….…..17

*Kendall v. Visa U.S.A., Inc.,* 518 F.3d 1042, 1047 (9th Cir. 2008)…………………………7

*Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35, 61 Cal. Rptr. 3d 221 (2007)………………………………………………………………..……………8

*Living Designs, Inc. v. E.I. Dupont de Nemours and Co.,* 431 F.3d 353, 365 (9th Cir. 2005)………………………………………………………………………………….……10

*Massachusetts Mutual Life Ins. Co. v. Superior Court,* (2002) 97 Cal. App.4[th] 1282, 1295 (Ct. App. 4th Dist.)………………………………………………………………………………11

*McKell v. Wash. Mut. Inc.*, 142 Cal. App. 4th 1457, 1471, 49 Cal. Rptr. 3d 227 (2006)….16,17

*Morales v. City of Los Angeles*, 214 F.3d 1151, 1153, 1155 (9th Cir.2000)…………………11

*Odom v. Microsoft Corp.,* 486 F.3d 541, 553 (9th Cir. 2007)…………………………….13,14

*Parrino v. FHP, Inc.,* 146 F.3d 699, 707 (9th Cir. 1998)………………………………....2

*People ex rel. Lockyear v. Fremont Life Ins.* 104 Cal. App. 4th 508, 515, 128 Cal. Rptr. 2d 463 (2002)………………………………………………………………………………18

*People v. Casa Blanca Convalescent Homes, Inc.,* 159 Cal. App. 3d 509, 530 (1984)……...14

*People v. Superior Court,* 9 Cal. 3d 283, 287- 88, 107 Cal. Rptr. 192 (1973)………………15

*Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 46-47, 77 Cal. Rptr. 709 (1998)………………………………………………………………………...…17

*Rick-Mik Enters., Inc. v. Equilon Enters., LLC*, No. 06-55937, 2008 WL 2697793, at *5 (9th Cir. July 11, 2008)………………………………………………………………………….7

*Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000)…………………………10

*Saunders v. Superior Court*, 27 Cal. App. 4th 832, 33 Cal. Rptr. 2d 438 (1994)……………17

-iii-

PLAINTIFFS MEMORANDUM IN OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO DISMISS

*Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)……………………………………………7

*Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc* ., 806 F.2d 1393, 1401 (9th Cir.1986)……………………………………………………………...10

*Sedima, S.P.R.L. v. IMREX Co.,* 473 U.S. 497(1985)…………………………………..12,13

*Skov. v. U.S. Bank National Assoc.* (Slip Opinion)

(C.A. 6th App. Dist. June 8, 2012 pg. 17)…………………………………………....14

*Smith v. City of Jackson,* 544 U.S. 228, 240 (2005)…………………………………17

*Sommerville v. Stryker Othopaedics,* 2009 U.S. Dist. Lexis 80753

 (N.D. Cal. Sept. 4, 2009)……………………………………………………………15

*State Farm Fire & Cas. Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1104, 53 Cal. Rptr. 2d 229 (1996)……………………………………………………..…………16

*Tanaka v. First Hawaii Bank*, 104 F. Supp. 2d 1243; 2000 U.S. Dist. LEXIS 10390 (Dist. Hawaii 2000)……………………………………………………………….……...8

 *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981)……………………..……6

*Van Winkle v. Allstate Ins. Co.,* 290 F. Supp.2d 1158, 1162, n.2 (C.D. Cal 2003)…………3

*Vernon v. Qwest Comm.,* 643 F.Supp.2d 1256……………………………………………15

*Walling v. Beverly Enterprises,* 476 F.2d 393, 297 (9th Cir. 1973)……………………......9

*Wards Cove Packing Co., Inc. v. Atonio, 490 U.S. 642* (1989)…………………..…………17

*Williams v. Gerber Products Co.*, 523 F.3d 934, 939 (9th Cir. 2008)…………………9

*Wilmer v. Sunset Life Ins.,* 78 Cal.App. 4th 952, 964 (2000)………………………………14

*Wool v. Tandem Computers, Inc*., 818 F.2d 1433, 1439 (9th Cir. 1987)……………..…9

**STATUTES:**

12 U.S.C. §2605…………………………………………………………………....10

15 U.S.C. § 1691…………………………………………………………………...13

15 U.S.C. § 1692…………………………………………………………………...10

18 U.S.C. § 1961………………………………………………………………………1

PLAINTIFFS MEMORANDUM IN OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO DISMISS

18 U.S.C. § 1962……………………………………………………………………1,13

18 U.S.C. § 1964……………………………………………………………………1,13

18 U.S.C. § 1968……………………………………………………………………1

California Civil Code Section 2923.5………………………………………………...14

California Code of Civil Procedure §2924.11……………………………………......14

California's Unfair Competition Law §17200………………………………...2,7,15,18

Federal Rules of Civil Procedure Rule 8(a)……………………………….………8,16

Federal Rules of Civil Procedure Rule 9(b)……………………….7,9,13,14,15,17,18

Federal Rules of Civil Procedure Rule 12(b)6………………………………………6,9

## OTHER:

5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §1357 (3d
ed.2004)………………………………………………………………………………...8

-v-

PLAINTIFFS MEMORANDUM IN OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO DISMISS

1

2 **MEMORANDUM IN OPPOSITION**

3 Rather than address the allegations of the complaint regarding the Countrywide ( Bank

4 of America as successor in interest) and Diablo Funding Group Inc.'s "Broker Enterprise"

5 bait and switch scam, the Defendants attempt to primarily dismiss this case on the basis of the

6 statute of limitations affirmative defense, for purposes discussed further below that argument

7 is improper at this juncture of this case. With respect to the Racketeer Influenced and Corrupt

8 Organizations Act (RICO) and California's Unfair Competition Law Section 17200 claims,

9 Defendants mischaracterize the First Amended Complaint (FAC) and gloss over the specific

10 allegations contained therein and the attachments to the SAC specifying the time, place,

11 manner and identity of the scheme at issue in this case that ultimately resulted in injury to the

12 Cabreras.

13 **I. INTRODUCTION**

14 The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968,

15 among other things, provides a civil cause of action for "any person injured in his business or

16 property by reason of a violation" of RICO's criminal provisions. See 18 U.S.C. § 1964(c).

17 RICO also provides a conspiracy cause of action. See 18 U.S.C. § 1962(d) ("It shall be un-

18 lawful for any person to conspire to violate any of the provision of subsection (a), (b), or (c)

19 of § 1962"). Overt acts for such conspiracy claims must be "act[s] of racketeering or

20 otherwise wrongful under RICO." *Beck v. Prupis,* 529 U.S. 494, 146 L. Ed. 2d 561, 120 S. Ct.

21 1608, 1616 (2000).

22 A civil RICO claim requires (1) conduct (2) of an "enterprise" (3) through a "pattern"

23 (4) of racketeering activity (or "predicate acts") (5) causing injury to the plaintiff's "business

24 or property." See, e.g., *Grimmett v. Brown,* 75 F.3d 506, 510 (9th Cir. 1996) (citations

25 omitted). A "pattern" for RICO purposes requires "at least two acts of racketeering activity . .

26 . the last of which occurred within ten years . . . after a prior act of racketeering activity." 18

27 U.S.C. § 1961(5). RICO's "predicate acts" or "racketeering activity" include violations of

28

-1-

certain federal statutes, many of which prohibit various types of fraud. See 18 U.S.C. § 1962. The predicate acts at issue here involve mail fraud.[1] The SAC ¶ 21 states "On or about June 26, 2009 Plaintiff obtained an ARM adjustment effective July 1, 2009 resulting in a monthly payment of between $8,816.94 to over $13,000.00 a month.  That loan modification supplanted the terms of the original note executed on or about July 25, 2007. A copy of the modification is attached hereto as Exhibit A.  The loan modification represented that the original note term was 5.375% when in fact it exceeded 11%, that representations contained in the loan modification concealed the true nature of the loan, a nature that was not apparent to the Plaintiffs until they obtained a forensic loan audit in the fall of 2009."  Exhibit A containing the time, place and manner of misrepresentations at issue indicates that it was mailed on June 25, 2009.  *Van Winkle v. Allstate Ins. Co.,* 290 F. Supp.2d 1158, 1162, n.2 (C.D. Cal 2003)(court may consider exhibits attached to complaint); See also *Parrino v. FHP, Inc.,* 146 F.3d 699, 707 (9th Cir. 1998)(court may also consider documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading).

On or about September 11, 2008 an involuntary petition for bankruptcy in the Northern District of California was filed against Diablo Funding Group Inc. Case No. 08-

---

[1] 19 U.S.C. § 1341states "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

-2-

45064, in that proceeding Diablo Funding Group Inc. disclosed that it had "[p]rior to the commencement of the case, the Debtor conducted business throughout the State of California as a mortgage broker and mortgage banker. The Debtor conducted business under seventy-three different alias business names in the eight years preceding the commencement of the case."[2] Dkt. No. 16.

Diablo Funding Group advertised on the internet as "Approved with over 450 lenders nationwide, Diablo Funding Group, Inc. offers over 5,500 different mortgage programs, widening the opportunity for prime and sub-prime borrowers to qualify for a home loan. The full line of home loan products extends from not only the conventional fixed and adjustable loans, but also the niche products, such as the interest only loans, 107% financing, and the no income/no asset verification options. As a result, borrowers receive exceptional rates and customer service."[3]

On or about December 18, 2007 the California Department of Real Estate entered a cease and desist Order against Diablo Funding Group "NOW THEREFORE, YOU, DIABLO FUNDING GROUP, INC. and THELMA MARGARET SAUNDERS, AND YOUR AGENTS AND EMPLOYEES, ARE  HEREBY ORDERED TO DESIST AND REFRAIN from causing to be published advertisements which include statements or representations with regard to rates, terms, or conditions for making or negotiating loans which are false, misleading or deceptive."  http://www2.dre.ca.gov/hearingfiles/H10274SF_P.pdf.

## II.  THE SAC'S  MATERIAL ALLEGATIONS

Defendants and their network of authorized, contracted brokers have defrauded countless borrowers across the nation in an undisclosed, systematic scheme designed to steer borrowers into subprime mortgages and loans irrespective of whether (i) the borrower would have qualified for a "prime loan" or (ii) the borrower was unable to meet the financial terms

---

[2] One of the aliases utilized by Diablo Funding Group was "Casas & Hipotecas" which in Spanish means homes and mortgages, it was that entity that interfaced completely in the Spanish language with the Plaintiffs, as they are natives of El Salvador.
[3] http://web.archive.org/web/20071028005031/http://www.diablofunding.net/Default.aspx? Reviewed September 18, 2012.

PLAINTIFFS MEMORANDUM IN OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO DISMISS

1   of the subprime mortgage. Indeed, Defendants have placed these borrowers in these

2   mortgages without performing an appropriate analysis of the suitability of such loans to the

3   borrowers' situation. SAC ¶ 16.

4        Defendants and their co-conspirators have systematically steered borrowers into

5   inappropriate subprime loans with excess charges and inadequately disclosed risks.

6   Defendants have done so through a variety of fraudulent means, for the sole purpose of

7   maximizing Defendants' own profitability, and without any regard for the financial

8   consequences to the borrower.  SAC ¶ 17.

9        On or about June 26, 2009 Plaintiff obtained an ARM adjustment effective July 1,

10  2009 resulting in a monthly payment of between $8,816.94 to over $13,000.00 a month.  That

11  loan modification supplanted the terms of the original note executed on or about July 25,

12  2007. A copy of the modification is attached hereto as Exhibit A.  The loan modification

13  represented that the original note term was 5.375% when in fact it exceeded 11%, that

14  representations contained in the loan modification concealed the true nature of the loan, a

15  nature that was not apparent to the Cabreras until they obtained a forensic loan audit in the fall

16  of 2009.  SAC ¶ 21.

17       The specific representations made to Plaintiffs prior to signing the loan documents,

18  included the representation that the initial interest rate of the loan was 5.875% (Adjustable

19  Rate Note Dated July 13, 2007) but in actuality the initial rate was 11.250% (Construction

20  Loan Note Addendum Dated July 17, 2007).  The Cabreras reasonably relied upon the

21  representations of the 5.875% rate as being fixed until June 2008 as a significant factor in

22  agreeing to the loan modification in 2009.  SAC ¶ 23.

23       Countrywide did not disclose to the Cabreras that in return for steering them into a

24  subprime loan, Diablo Funding Inc. received a substantial bounty as a consequence.  That

25  disclosure would have been material to the Cabreras because they were under the impression

26  that Diablo Funding Inc. was working on their behalf to obtain the best possible loan with

27

28

-4-

PLAINTIFFS MEMORANDUM IN OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION
TO DISMISS

1   respect to their individualized circumstances.  If they had known about the [b]ounty, they

2   would have not have engaged in the transaction based on the agreed upon terms.  SAC ¶ 33.

3          As a consequence of Countrywide's scheme to issue subprime loans that were entirely

4   unsuitable to the borrower, many borrowers including the Plaintiffs have entered into loans in

5   amounts far greater than what they could actually afford, and/or loans with very risky terms

6   that had been concealed or inadequately explained to them.  SAC ¶ 45.  In this case, Plaintiffs

7   were provided a $1.8 million loan with declared income of $100,000.00.

8      Countrywide and its brokers had told Plaintiffs that they will be able to refinance their

9   loans when their loan payments increase.  SAC ¶ 52.

10          Unbeknownst to borrowers, Diablo Funding Inc. was rewarded for making as many

11   risky, high-cost loans as possible, pursuant to the Company's commission structure. Even

12   where borrowers qualify for prime loans, Countrywide improperly incentivizes and

13   encouraged Diablo Funding Inc., through financial incentives, to move them into the

14   subprime category. For example, Countrywide has paid commissions on a subprime loan of

15   0.50% of the loan's value, while the commission on loans in the next highest category would

16   be a mere 0.20% of the loan's value. In addition, mortgage brokers' commissions would vary

17   on loans in which the interest rate would increase after a short period with a low teaser rate;

18   the higher the reset interest rate, the greater the commission earned.  In this case the

19   misleading 5.375% teaser rate. SAC ¶ 61.

20          Based upon Plaintiffs' current knowledge, the following persons constitute a group of

21   individuals associated in fact that will be referred to herein as the "Countrywide Broker

22   Enterprise": (1) Countrywide, including its LandSafe loan closing services subsidiaries, and

23   (2) Diablo Funding Group.  SAC ¶ 72.

24          For the purpose of executing and/or attempting to execute the above described scheme

25   to defraud or obtain money by means of false pretenses, representations or promises, the

26   Defendants, in violation of 18 U.S.C. § 1341, placed in post offices and/or in authorized

27   repositories matter and things to be sent or delivered by the Postal Service, caused matter and

28

PLAINTIFFS MEMORANDUM IN OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION
TO DISMISS

1 | things to be delivered by commercial interstate carriers, and received matter and things from

2 | the Postal Service or commercial interstate carriers, including but not limited to promotional

3 | materials, applications, agreements, manuals, and correspondence.  SAC ¶ 72.

4 | On December 21, 2011 the United States Department of Justice announced a $335

5 | million settlement with Countrywide Financial Corp to "Resolve Allegations of Lending

6 | Discrimination by Countrywide Financial Corporation" against Hispanic Borrowers. SAC ¶

7 | 95.

8 | Statistical analyses of loan data kept by Countrywide on wholesale 30-year term prime

9 | and subprime loans originated by Countrywide between January 2004 and August 2007

10 | demonstrate that on a nationwide basis Hispanics who qualified for a Countrywide home

11 | mortgage loan and who obtained wholesale loans from Countrywide had odds between

12 | approximately 2.6 and 3.5 times higher than similarly-situated non- Hispanic White borrowers

13 | of receiving a subprime loan instead of a prime loan, after accounting for objective credit

14 | qualifications. SAC ¶ 99.

15 | The Plaintiffs had a loan modification application pending at the time the foreclosure

16 | was executed, under the UCL Section 17200 Plaintiffs assert that it was a violation of the

17 | UCL under its "unfairness prong" for the foreclosure to be executed during the pendency of

18 | the loan modification application.  SAC ¶ 99.

19 | **III. LEGAL STANDARDS**

20 | A motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the

21 | legal sufficiency of the pleadings. "When a federal court reviews the sufficiency of a

22 | complaint, before the reception of any evidence by affidavit or admissions, its task is

23 | necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but

24 | whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,*

25 | 416 U.S. 232, 236 (1974), overruled on other grounds by *Harlow v. Fitzgerald*, 457 U.S. 800

26 | (1982). "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of

27 | the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the

28 |

PLAINTIFFS MEMORANDUM IN OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO DISMISS

1   statement need only give the defendant fair notice of what the . . . claim is and the grounds

2   upon which it rests." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (internal quotation

3   marks and citation omitted; alteration in original). "It is axiomatic that 'the motion to dismiss

4   for failure to state a claim is viewed with disfavor and is rarely granted.'" *Hall v. City of*

5   *Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986). Thus, "it is only the extraordinary case

6   in which dismissal is proper." *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir.

7   1981); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §1357 (3d

8   ed.2004).  The Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, __ U.S. __,

9   127 S. Ct. 1955, 1974, 167 L. Ed. 2d. 929 (2007), makes clear that it was not imposing a

10  heightened pleading standard: "[W]e do not require heightened fact pleading of specifics, but

11  only enough facts to state a claim to relief that is plausible on its face."  In fact, only two

12  weeks after issuing *Twombly,* the Supreme Court, in a §1983 case, cited the *Twombly* decision

13  for the proposition that Rule 8(a)(2) requires only a "'short and plain statement of the claim,'.

14  . . [s]pecific facts are not necessary; the statement need only "give the defendant fair notice of

15  what the … claim is and the grounds upon which it rests.''" *Erickson v. Pardus*, __ U.S. __,

16  127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2008).  Indeed, the Ninth Circuit noted in two

17  recent decisions that *Twombly*'s enhanced pleading standard does not extend beyond that

18  limited context. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008)

19  (reasoning that *Twombly*'s higher pleading standards is uniquely necessary in antitrust actions

20  "because discovery in antitrust cases frequently causes substantial expenditures and gives the

21  plaintiff the opportunity to extort large settlements even where he does not have much of a

22  case"); *accord Rick-Mik Enters., Inc. v. Equilon Enters., LLC*, No. 06-55937, 2008 WL

23  2697793, at *5 (9th Cir. July 11, 2008) (emphasizing *Twombly*'s application "in antitrust

24  matters").[4]

25  _____

26  [4] "Plausibility," as it is used in *Twombly* and *Iqbal*, does not refer to the likelihood that a
    pleader will succeed in proving the allegations. Instead, it refers to whether the non-
    conclusory factual allegations, when assumed to be true, "allow[ ] the court to draw the
27  reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct.
    at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for

28

PLAINTIFFS MEMORANDUM IN OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION
TO DISMISS

1    Plaintiffs' allegations satisfy the requirements of Rule 9(b) because the circumstances

2    constituting the alleged fraud "'are specific enough to give defendants notice of the particular

3    misconduct . . . so that they can defend against the charge and not just deny that they have

4    done anything wrong.' " *Bly-Magee v. California,* 236 F.3d 1014, 1019 (9th Cir. 2001)

5    (quoting *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993)); *Germain v. J.C. Penny Co.*

6    *et. al.,* 2009 WL 1971336*3*4 ("Plaintiffs have sufficiently identified 'the circumstances

7    constituting fraud so that the defendant can prepare an adequate answer from the allegations'"

8    quoting *Walling v. Beverly Enterprises,* 476 F.2d 393, 297 (9th Cir. 1973)); see *In re*

9    *Countrywide Financial Corp. Marketing and Sales Practice Litigation,* 601 F,Supp. 2d 1201,

10   1215 (S.D. Cal. 2009) (" the plaintiff must 'state the time, place, and specific content of the

11   false representations as well as the identities of the parties to the misrepresentation.'") see also

12   *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987)) (stating "the

13   requirements of Rule 9(b) relax 'as to matters peculiarly within the opposing party's

14   knowledge.'")

15   With respect to claims brought under the California Unfair Competition Law

16   ("UCL") dismissal at the pleadings stage occurs only in the rarest of cases, as "California

17   courts . . . have recognized that whether a business practice is deceptive will usually be a

18   question of fact not appropriate for a decision on demurrer." *Williams v. Gerber Products Co.*,

19   523 F.3d 934, 939 (9th Cir. 2008); *see, e.g.*, *Linear Tech. Corp. v. Applied Materials, Inc.*,

20   152 Cal. App. 4th 115, 134-35, 61 Cal. Rptr. 3d 221 (2007) ("Whether a practice is deceptive,

21   fraudulent, or unfair is generally a question of fact which requires 'consideration and

22   weighing of evidence from both sides' and which usually cannot be made on demurrer.'").

23   Plaintiffs' Complaint provides fair notice. Defendants' motions should be denied in their

24   entirety.

25   **IV. ARGUMENT**

26

27   _____

more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting *Twombly*,

28   550 U.S. at 557, 127 S.Ct. 1955).

PLAINTIFFS MEMORANDUM IN OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION
TO DISMISS

## A.  PLAINTIFFS' CLAIMS ARE NOT PRECLUDED BY THE STATUTE OF LIMITATIONS BECAUSE OF FRAUDULENT CONCEALMENT

Defendant essentially argues that the four year statute of limitations precludes all of the claims asserted by Plaintiff.  Unsurprisingly, the Defendant ignores the significance of the June 26, 2009 ARM adjustment as the basis for accrual of new causes of action, and instead cites the initial July 25, 2007 transaction as the binding date for purposes of statute of limitation calculation. Plaintiffs here plead fraudulent concealment "RICO's limitations period is subject to equitable estoppel or equitable tolling under the doctrine of fraudulent concealment, if a plaintiff has exercised "due diligence" in investigating claims." *Tanaka v. First Hawaii Bank*, 104 F. Supp. 2d 1243; 2000 U.S. Dist. LEXIS 10390 (Dist. Hawaii 2000); SAC ¶ 22 ("Countrywide's customers, due to the inherent nature of Countrywide's undisclosed system and due to deception and concealment, have no way of knowing or suspecting (a) the existence of Countrywide' s wrongful practices; and (b) that they received a loan that is far less favorable than that which they were qualified to receive.) In this case the Plaintiffs did undertake an audit of their mortgage by an attorney as soon as "storm warnings" of the nationwide mortgage meltdown filtered down to the average consumer. *Cetel v. Kirwan Financial Group, Inc*., 460 F.3d 494, 507 (3d Cir. 2006)("storm warnings have not been exhaustively catalogued, but they are essentially any information or accumulation of data 'that would alert a reasonable person to the probability that misleading statements or significant omissions had been made'"); See SAC¶ 22.

The lawyer's investigation revealed a series of questionable if not illegal practices associated with the original loan, moreover through no fault of Plaintiffs their attorney failed to provide competent legal services regarding basic communications with the Cabreras on statute of limitations issues  "principles of equity can justify tolling a limitations period where counsel's behavior is sufficiently egregious. " *Avagyan v. Holder,* 646 F.3d 672, 678 (9th Cir. 2011). During the period between that legal representation and shortly before the filing of the instant complaint; the prior attorney was purportedly engaged in attempting a loan modification "it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss (where review

-9-

PLAINTIFFS MEMORANDUM IN OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO DISMISS

1    is limited to the complaint) if equitable tolling is at issue. *Huyhn v. Chase Manhattan Bank,*

2    465 F.3d 992, 1003-1004 (9th Cir. 2006).

3         The 2009 loan modification further concealed the true nature of the bait and switch

4    scheme by misrepresenting the true initial interest rate as 5.875% (Adjustable Rate Note

5    Dated July 13, 2007) but in actuality the initial rate was 11.250% (Construction Loan Note

6    Addendum Dated July 17, 2007), Bank of America had thus furthered the scheme imposed by

7    Countrywide in order to avoid raising any red flags regarding prior misrepresentations. The

8    Ninth Circuit has held that a motion to dismiss on statute of limitations grounds cannot be

9    granted if "the complaint, liberally construed in light of our 'notice pleading' system,

10   adequately alleges facts showing the potential applicability of the equitable tolling doctrine."

11   *Cervantes v. City of San Diego,* 5 F.3d 1273, 1277 (9th Cir.1993); see also *Morales v. City of*

12   *Los Angeles*, 214 F.3d 1151, 1153, 1155 (9th Cir.2000). Equitable tolling is appropriate in this

13   case because the Cabreras did undertake an investigation after "storm warnings" arose, and

14   moreover the perpetuation of the scheme by Bank of America in conveying the false

15   information regarding the nature of the original loan and the applicable interest rate for the

16   first year in the 2009 loan modification actively concealed the true nature of the original loan

17   at issue. *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000). "A proponent of

18   equitable tolling need not show affirmative misconduct on behalf of the opposing party;

19   rather, all one need show is that by the exercise of reasonable diligence, the proponent could

20   not have discovered essential information bearing on the claim." Id. (citing *Socop-Gonzalez v.*

21   *I.N.S.,* 272 F.3d 1176, 1184 (9th Cir. 2001)).

     **B.  A RICO CAUSE OF ACTION ACCRUES WHEN A PLAINTIFF KNOWS**
22   **      OR SHOULD HAVE KNOWN OF AN INJURY**

23        On or about May 3, 2011 the Plaintiff received a letter from the law firm of Blank and

24   Rome LLP in response to Plaintiffs request dated February 22, 2011 for all debt documents.

25   The law firm representing Bank of America, provided a copy of the adjustable rate note and a

26   payment history, and responded that the "remainder of your requests are respectfully declined

27   as they request information beyond the scope" of a verification of debt 15 U.S.C. § 1692(g) or

28

                                          -10-
     _____
     PLAINTIFFS MEMORANDUM IN OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION
     TO DISMISS

1  qualified written request under 12 U.S.C. §2605(e). The limitations period for Civil RICO

2  actions begins to run when a plaintiff knows or should know of the injury which is the basis

3  for the action. *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.,* 431 F.3d 353, 365 (9th

4  Cir. 2005). "Discovery of the injury, not the discovery of the other elements of a claim, is

5  what starts the clock" *Grimmett v. Brown*, 75 F.3d 506, 511 (9th Cir. 2005). "Ordinarily

6  [courts] leave the question of whether a plaintiff knew or should have become aware of a

7  fraud to the jury." *Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 275 (9th Cir.

8  1988).  A plaintiff cannot know or be deemed to know of his injury until all of the elements of

9  his cause of action exist.  See *Sedima, S.P.R.L. v. IMREX Co.,* 473 U.S. 497(1985) ("[T]he

10  compensable injury necessarily is the harm caused by predicate acts sufficiently related to

11  constitute a pattern, for the essence of the violation is the commission of those acts in

12  connection with the conduct of an enterprise."). In particular, at least some continuity must

13  exist, which requires either "a series of related predicates extending over a substantial period

14  of time" or "past conduct that by its nature projects into the future with a threat of repetition."

15  *H.J., Inc. v. Northwestern Bell Telephone Co.,492* U.S. 229, 241-42, (1989); see *Grimmett*, 75

16  F.3d at 512 ("[C]ontinuity cannot usually be proven unless the scheme has been in existence

17  for at least one year.").  In this case the injury relates to the 2009 modification which

18  reiterated the misrepresentations of the 2007 original loan, continued the scheme in an

19  identical pattern of misrepresentation and ultimately resulted in injury because the Cabrera's

20  home was foreclosed upon.

21        **C.  THE DELAYED DISCOVERY RULE APPLIES TO UCL CLAIMS**

22        With respect to the UCL claims, the Court in *Broberg v. Guardian Life Insurance Co.*

23  *of America,* (2009) 40 Cal.4th 623, 639 (Ct. App. 2nd Dist.) held that where the harm from the

24  unfair conduct will not be reasonably discovered until a future date, the time to file starts to

25  run only when a reasonable person would have discovered the factual basis for the claim, and

26  that issue is to be decided generally as a question of fact.  See also *Massachusetts Mutual Life*

27

28

PLAINTIFFS MEMORANDUM IN OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION
TO DISMISS

1  *Ins. Co. v. Superior Court,* (2002) 97 Cal. App.4th 1282, 1295 (Ct. App. 4th Dist.)(delayed

2  discovery rule probably applies to fraudulent prong UCL claims).

### D.  THE ECOA CLAIM IS TIMELY BECAUSE COUNTRYWIDE AGREED TO TOLL THE STATUTE OF LIMITATIONS WITH RESPECT TO 2007 AND 2009 ECOA VIOLATIONS

5          Through series of tolling agreements with the United States Justice Department

6  Countrywide agreed to a suspension of the running of the applicable statute of limitations for

7  any cause of action arising from review and examination determinations by the Federal

8  Reserve Board (March 22, 2007 through December 22, 2011) and Office of Thrift

9  Supervision (July 1, 2009 through December 22, 2011) regarding pattern and practice

10 discrimination based on race and ethnicity in violation of Section 701(a) of the Equal Credit

11 Opportunity Act.  See *United States v. Countrywide,* Case No. 11-10540 Complaint at ¶ 22-

12 23.  Because the tolling agreements are prima facie applicable to the 2007 and 2009 Cabrera

13 transactions, the ECOA claim has been asserted within one year of the announcement of the

14 United States Department of Justice enforcement action against Countrywide in satisfaction of

15 15 U.S.C. § 1691e(f).[5] The statutory purpose of Section 1691e(f) would be effectively negated

16 if the United States could toll the ECOA statute with respect to its enforcement powers and

17 civil litigants once informed of their potential injury, could not pursue further civil remedies

18 within "one year after the commencement of the proceeding or action." Id.  Accordingly, the

19 ECOA claims may not be dismissed with prejudice at this stage of the litigation, absent

20 definitive proof that the referenced tolling agreements do not apply to this case.

### E.  RICO CLAIMS BASED ON THE BAIT AND SWITCH SCHEME ARE APPROPRIATE UNDER THE FACTS OF THIS CASE

23         In *Emery v. American General Finance Inc*., 71 F.3d 1343 (7th Cir. 1995) the 7th

24 Circuit reversed a district court dismissal of a RICO complaint alleging "loan flipping" where

25 the lender had sent a letter to "Dear Verna" (three months after obtaining a $1,900.00 loan for

_____

[5] On July 21, 2010 President Obama signed the Dodd-Frank Wall Street Reform and
Consumer Protection Act, which amended the ECOA's statute of limitations from two to five
years. See Act of July 21, 2010, Pub. L. No. 111-203, § 1085.

PLAINTIFFS MEMORANDUM IN OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION
TO DISMISS

a typewriter and a television with a 36% finance charge at $1,300 payable within three years)

stating that it had "extra money for [her]" described the plaintiff as a "good customer" and

promised to "set aside $750.00" in her name. When "Verna" showed up to take advantage of

the offer, she signed a new note for $2,399.83 and a finance charge of $1,641.28, in reversing

the district court dismissal the Court stated that the there was a scheme to defraud involving

the use of mails. "The allegation is that she belongs to a class of borrowers who are not

competent interpreters of such forms and that the defendant knows this and sought to take

advantage of it. Taking advantage of the vulnerable is the leitmotif of fraud." Id. at 1347.  In

this case Countrywide and Diablo Funding Group were engaged in scheme that utilized mail

to mislead limited English speakers  into thinking they were getting a better loan, than what

they actually got.  By hiding the true nature of the applicable high interest rate into a

secondary form at origination and working with a broker paid undisclosed bounties, and

continuing the misrepresentation of the originating interest rate at modification in 2009; a

pattern to deceive is evident, that pattern injured the Cabreras and is potentially capable of

open ended repetition to many more persons that have outstanding loans originated by Diablo

Funding Group.

### F.  THE ELEMENTS TO SATISFY RICO PLEADING ARE PRESENT IN THE FAC

The elements of a civil RICO claim are simple enough: (1) conduct (2) of an

enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5)

causing injury to the plaintiff's "business or property." 18 U.S.C. §§ 1964(c), 1962(c); *Sedima,*

*S.P.R.L. v. IMREX Co.,* 473 U.S. 4793275 (1985). At a minimum, a civil RICO plaintiff must

allege a continuous pattern of at least two related predicate acts of racketeering within ten

years. *Allwaste, Inc. v. Hecht,* 65 F.3d 1523, 1527 (9th Cir. 1995). The requisite continuity

may be shown through either a closed-ended substantial period of past conduct or an open-

ended pattern of conduct with a threat of repetition. Id. While isolated or sporadic acts fail to

satisfy the continuity requirement, acts that constitute an ongoing entity's regular way of

doing business are sufficient. Id. at 1527-29.  Mail fraud "occurs whenever a person, 'having

PLAINTIFFS MEMORANDUM IN OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO DISMISS

de-vised or intending to devise any scheme or artifice to defraud,' uses the mail 'for the purpose of executing such scheme or artifice or attempting so to do.'" *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639 (2008). Rule 9(b), Fed. R. Civ. P., "requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Odom v. Microsoft Corp.,* 486 F.3d 541, 553 (9th Cir. 2007). As identified in the Introduction of the SAC and the Exhibits attached to it; the RICO allegations are sufficiently plead to avoid dismissal.

Moreover, Plaintiffs specifically allege an associated-in-fact enterprises made up of Countrywide and Diablo Funding Group Inc. SAC ¶ 72. The criteria for an associated-in-fact enterprise are "a group of persons associated together for a common purpose of engaging in a course of conduct," "evidence of an ongoing organization, formal or informal," and "evidence that the various associates function as a continuing unit." *Odom,* 486 F.3d at 552 (quoting *United States v. Turkette,* 452 U.S. 576, 583 (1981)). Plaintiffs adequately allege that defendants formed a cohesive ongoing unit, Bank of America could have chosen to opt out of the Diablo Funding Group Inc. originations in 2009 when it modified the Cabrera loan, it chose not to, as Countrywide's successor in interest it is now bound to the misrepresentations it ratified, moreover Bank of America's utilization of Countrywide's misrepresentations evinces a regular course of business requiring judicial intervention. See *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc* ., 806 F.2d 1393, 1401 (9th Cir.1986) (to allege mail or wire fraud predicates for RICO claims, plaintiff must state the time, place, and specific content of the false representations as well as the identities of the parties to the representations as required by Rule 9(b)). Lastly, the Exhibits to the SAC alone satisfy the elements of Rule 9(b).

### G. THE UCL CLAIMS ARE BASED IN PART ON THE UNFAIRNESS OF "DUAL TRACKING" FORECLOSURES

Plaintiffs only needs to show that defendants engaged in a business practice that was unlawful or "unfair" because it offends an established public policy, is immoral, unethical, oppressive, injurious to customers, or unscrupulous. *Wilmer v. Sunset Life Ins.,* 78 Cal.App.

-14-

1    4th 952, 964 (2000); *People v. Casa Blanca Convalescent Homes, Inc.,* 159 Cal. App. 3d 509,

2    530 (1984).  As alleged in the SAC, plaintiff was foreclosed upon pending a modification.

3    The SAC alleges non-compliance with Cal. Civ. Code Section 2923.5, the question of

4    compliance with that statute is a question of fact. *Skov v. U.S. Bank National Assoc.* (Slip

5    Opinion) (C.A. 6th App. Dist. June 8, 2012 pg. 17).  On July 11, 2012, California Governor

6    Jerry Brown signed into law the Homeowner Bill of Rights, that law prohibits "dual

7    tracking", i.e. foreclosing when a modification is pending. Cal.Code Civ. Pro §2924.11.  The

8    statute incorporates the National Mortgage Settlement pg. A-17 between Bank of America the

9    Countrywide entities and the United States dated April 4, 2012 states "that if a borrower has

10   not already been referred to foreclosure, Servicer shall not refer an eligible borrower's

11   account to foreclosure while the borrower's complete application for any loan modification

12   program is pending."  While these public policy codifications were implemented just this

13   year, it is evident that dual tracking was ratified as unfair because of the oppressive nature of

14   the practice during a time of national crisis. Unfortunately the Cabreras lost their home before

15   the above described protections were implemented as matters of formal public policy,

16   however in light of these reforms it is still possible to establish the unfairness of "dual

17   tracking" as applied to the circumstances of the Cabreras under the UCL regardless of the

18   temporal enactments of the reforms cited above.

19   **H.  FEDERAL RULE OF CIVIL PROCEDURE 9(B) DOES NOT APPLY TO
     PLAINTIFFS' UCL CLAIMS BECAUSE THEY DO NOT SOUND IN
20   FRAUD**

21        The text of Rule 9(b) requires only that in 'all ***averments of fraud*** . . . the

22   circumstances constituting fraud . . . shall be stated with particularity.' *See Sommerville v.*

23   *Stryker Othopaedics*, 2009 U.S. Dist. Lexis 80753 (N.D. Cal. Sept. 4, 2009)("Pleading a

24   claim under the fraudulent prong of *Section 17200* is not the same as pleading common law

25   fraud; "*[S]ection 17200* does not require a plaintiff to plead all of the elements of fraud." *In re*

26   *Mattel, Inc.,* 588 F. Supp. 2d 1111, 1118 (C.D. Cal. 2008) (finding that the complaint with a

27   fraudulent *Section 17200* claim "neither specifically alleges fraud nor alleges facts that

28

-15-

PLAINTIFFS MEMORANDUM IN OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION
TO DISMISS

1   necessarily constitute fraud");  *Gruen v. Van Ru Credit Corp.,* 2009 U.S. Dist. Lexis 60396

2   (N.D. Cal. July 15, 2009); *see also Vernon v. Qwest Comm., 643 F.Supp.2d 1256 citing In re*

3   *Mattel, Inc.* for the proposition that "allegations of likely deception are not enough to trigger

4   Rule 9(b.)"

5        The California Supreme Court has consistently interpreted the UCL broadly to sustain

6   consumer claims without requiring they be plead with heightened particularity. *See People v.*

7   *Superior Court*, 9 Cal. 3d 283, 287- 88, 107 Cal. Rptr. 192 (1973) (issues relating to when,

8   where or whom constituted evidentiary facts that need not be pleaded); *Committee on*

9   *Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211-12 n.11, 197 Cal. Rptr.

10  783 (1983) ("The requirement that fraud be pleaded with specificity . . . does not apply to

11  causes of action under the consumer protection statutes."); *accord Quelimane Co. v. Stewart*

12  *Title Guar. Co.*, 19 Cal. 4th 26, 46-47, 77 Cal. Rptr. 709 (1998) (same).

13       As demonstrated below, even if the Court believes Rule 9(b) could apply to certain

14  types of UCL allegations, this is not one of those rare actions. *see also In re NationsMart*

15  *Corp. Sec. Litig.*, 130 F.3d 309, 315 (8th Cir. 1997) ("[A] pleading standard which requires a

16  party to plead particular facts to support a cause of action that does not include fraud or

17  mistake as an element comports neither with Supreme Court precedent nor with the liberal

18  system of 'notice pleading' embodied in the Federal Rules of Civil Procedure"). Defendants

19  fail to point to a single allegation or averment of Plaintiffs' that sounds in fraud. Thus, the

20  UCL counts are subject to Rule 8(a)'s "notice pleading requirements," not Rule 9(b). *See*

21  *Quelimane*, 19 Cal. 4th 26 (a cause of action for unfair competition does not require the

22  specificity of pleading required for fraud).

23       As California courts have recognized, "the primary purpose of the [UCL] . . . is

24  to protect the public from unscrupulous business practices." *Consumers Union of U.S., Inc. v.*

25  *Alta-Dena Certified Dairy*, 4 Cal. App. 4th 963, 975, 6 Cal. Rptr. 2d 193 (1992). The UCL

26  has four distinct "prongs": (1) unfair conduct; (2) unlawful conduct; (3) fraudulent conduct;

27

28
                                          -16-

and (4) false advertising. A business practice need only meet one of the prongs to violate the UCL. *McKell v. Wash. Mut. Inc.*, 142 Cal. App. 4th 1457, 1471, 49 Cal. Rptr. 3d 227 (2006).

California courts have interpreted "unfair" conduct to be established by weighing the "utility of the defendant's conduct against the gravity of the harm to the alleged victim." *State Farm Fire & Cas. Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1104, 53 Cal. Rptr. 2d 229 (1996). Plaintiffs set forth numerous reasons why Defendants' conduct is "unfair" – none of the reasons are fraud based.  California courts have also defined "unlawful" business practices within the meaning of the UCL to "'include anything that can be properly called a business practice and that at the same time is forbidden by law.'" *McKell*, 142 Cal. App. 4th at 1474 (citing *Cel-Tech Communs., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180, 83 Cal. Rptr. 2d 548 (1999). With respect to the unlawful prong, '[v]irtually any state, federal or local law can serve as the predicate for an action' under section 17200.") (emphasis omitted). *People ex rel. Lockyear v. Fremont Life Ins.* 104 Cal. App. 4th 508, 515, 128 Cal. Rptr. 2d 463 (2002).  The UCL therefore permits violations of other laws to be treated as unfair competition that is independently actionable. *McKell*, 142 Cal. App. 4th at 1474-75 (even if the underlying law does not afford a private right of action it is actionable under the UCL). A violation of the underlying law is a *per se* violation of the UCL. *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 33 Cal. Rptr. 2d 438 (1994). Defendants would have this Court impose Rule 9(b) standards simply because Plaintiffs allege violations of §17200's fraudulent prong. However, "the term 'fraudulent' in [§17200] does not refer to the common law tort of fraud." *Id.*  Thus, Plaintiffs' UCL counts provide requisite particularity and are well-plead.

## I.   THE ECOA CLAIM MAY BE PREMISED ON DISPARATE IMPACT

To establish a disparate impact claim a  plaintiff must show that an otherwise neutral practice disparately affects qualified members of a protected class. If a claimant establishes a disparate effect on a protected class, then the burden shifts to the defendant to offer a "legitimate business justification" for the challenged practice. If the defendant satisfies this

PLAINTIFFS MEMORANDUM IN OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO DISMISS

1    burden, then the claimant must demonstrate either that the justification is a sham or that

2    another practice known to the defendant both serves the same business purpose and has a

3    smaller disparate effect on the protected class. E.g., *Wards Cove Packing Co., Inc. v. Atonio,*

4    *490 U.S. 642* (1989).  The Supreme Court has clarified that *Wards Cove* continues to apply to

5    civil rights laws other than Title VII.  *Smith v. City of Jackson,* 544 U.S. 228, 240 (2005)

6    ("While the relevant 1991 amendments expanded the coverage of Title VII, they did not

7    amend the ADEA or speak to the subject of age discrimination. Hence, Wards Cove's pre-

8    1991 interpretation of Title VII's identical language remains applicable to the ADEA.").

9    Similarly, because the Civil Rights Act of 1991 did not amend the FHA or ECOA, the Wards

10   Cove standard is the standard that would apply to disparate impact claims under ECOA.  The

11   disparate impact analysis utilizing statistical evidence is precisely the evidence utilized by the

12   United States Justice Department against Countrywide. On December 21, 2011 the United

13   States Department of Justice announced a $335 million settlement with Countrywide

14   Financial Corp to "Resolve Allegations of Lending Discrimination by Countrywide Financial

15   Corporation" against Hispanic Borrowers. SAC ¶ 95.  Because the SAC contains statistical

16   information that the Cabrera's may have been subject to discrimination in the loan they

17   received, because Countrywide was subject to a United States enforcement action for

18   discriminatory lending practices, because the Cabrera's are members of a protected class

19   (Hispanic), and because the disparate impact analysis is a basis to bring such claims under

20   ECOA, the issue is ripe for further consideration by this Court.

21        **J.   MRS. CABRERA HAS STANDING IN THIS CASE**

22        RICO standing requires an injury to one's business or property, "but for" causation,

23   and proximate causation. *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639 (2008). *Bridge*

24   rejected reliance and face to face transactions as RICO requirements.  Mrs. Cabrera is not

25   remote to the transactions at issue, as  a result of losing her home she has lost valuable

26   community property rights, any argument to the contrary should not be entertained.

27        **V. CONCLUSION**

28

-18-

PLAINTIFFS MEMORANDUM IN OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION
TO DISMISS

1        For the foregoing reasons and those set forth in Plaintiffs' Memorandum in

2   Opposition, Plaintiffs respectfully submit that this Court should deny Defendants' motion in

3   its entirety.

4   Dated:  September 21, 2012            Respectfully submitted,

5

6                    By:     **/s/ Julio J. Ramos**
                         JULIO J. RAMOS (SBN. 189944)

7                        ramosfortrustee@yahoo.com
                         LAW OFFICES OF JULIO J. RAMOS

8                        35 Grove Street, Suite 107
                         San Francisco, California 94102

9                        Telephone:    (415) 948-3015
                         Facsimile:    (415) 469-9787

10                       STEVEN M. NUÑEZ (SBN. 185421)

11                       steve@wardhagen.com
                         WARD & HAGEN, LLP

12                       440 Stevens Ave., Ste. 350
                         Solana Beach, CA 92075

13                       Telephone:    (858) 847-0505
                         Facsimile:    (858) 847-0105

14                       Attorneys for Plaintiffs

15                       MANUEL CABRERA & MILA
                         CABRERA

16

17

18

19

20

21

22

23

24

25

26

27

28

-19-

PLAINTIFFS MEMORANDUM IN OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION
TO DISMISS