United States District Court
For the Northern District of California

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

MANUEL CABRERA and MILA CABRERA,
individually and on behalf of the general public,

        Plaintiffs,

  v.

COUNTRYWIDE FINANCIAL, et al.

        Defendants.

_____/

No. C 11-4869 SI

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS**

Currently before the Court is a motion to dismiss plaintiffs' First Amended Complaint, filed on behalf of "defendants named as 'Countrywide Financial,' 'Countrywide Home Loans Inc., dba America's Wholesale Lender,' 'Countrywide Bank FSB,' and 'Bank of America Inc.'(collectively 'Defendants')." Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for disposition without oral argument, and therefore VACATES the hearing currently scheduled for November 2, 2012. Having considered the parties' papers, and for good cause appearing, the motion is GRANTED IN PART and DENIED IN PART, for the reasons set forth below.

## BACKGROUND

In July 2007, Manuel Cabrera received a home mortgage loan from Countrywide Home Loans, Inc., dba America's Wholesale Lender ("Countrywide"). First Amended Complaint ("FAC") ¶ 23, Exh. C. The Adjustable Rate Note was issued on July 13 for $1,875,000 at an initial interest rate of 5.875%. *Id.* at Exh. C. The interest rate would become adjustable starting in July 2008 to a rate based on the LIBOR Index, but the rate was never to exceed 11.875%. *Id.* On July 17, 2007, Manuel Cabrera

executed a Construction Note Addendum, which "amends and supplants" the Adjustable Rate Note. *Id.* The Construction Note Addendum states that "[t]he initial Interest Rate is 11.250%." *Id.* The interest rate could change each month in a formula tied to the highest Prime Rate, but it could not exceed 11.875%. *Id.* The Cabreras state that they relied on "the representation that the initial interest rate of the loan was 5.875% . . . but in actuality the initial rate was 11.235%." *Id.* The originator of the loan, Diablo Funding Inc., received a bounty for the loan that was not disclosed to the Cabreras. *Id.* at ¶ 33.

Two years later, Manuel Cabrera and Mila Cabrera,[1] his wife, executed an Adjustable Rate Mortgage ("ARM") with Countrywide that modified their original loan. *Id.* at ¶ 21, Exh. A. The ARM stated, "The current Note Rate of **5.375%** will continue through **June 30, 2009**\* in accordance with the Addendum to Note, executed **July 13, 2009**. . . . **\*Subject to the terms of the Construction Loan Note Addendum.**" *Id.* (emphasis in original). The ARM was signed on June 26, 2009. *Id.* The Cabreras allege that "the loan modification represented that the original note term was 5.375% when in fact it exceeded 11% [and] representations contained in the loan modification concealed the true nature of the loan." *Id.* They also allege that they "reasonably relied upon the representations of the 5.875% rate as being fixed until June 2008 as a significant factor in agreeing to the loan modification in 2009." *Id.* at ¶ 23.

In the fall of 2009, the Cabreras obtained a "forensic loan audit." *Id.* at ¶ 21. In November 2009, the Cabreras obtained the services of eModify to write a letter informing Bank of America of its loan servicing violations. *Id.* at ¶ 22, Exh. B.

On June 30, 2011, the home was foreclosed. *Id.* page 1. At the time of foreclosure, the Cabreras had a loan modification pending. *Id.* The Cabreras are Hispanic. *Id.*

The Cabreras also allege that Countrywide discriminated against Hispanic borrowers by giving them subprime loans when they actually qualified for prime loans. *Id.* at ¶ 99. However, the Cabreras do not allege that when they were given a subprime loan, they were qualified for a prime loan.

On September 30, 2011, the Cabreras filed this action.

---

[1] Maria Cabrera is the name on the ARM, although Mila Cabrera is the name this action was filed under.

United States District Court
For the Northern District of California

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

**DISCUSSION**

**1.      Civil RICO Claims**

Plaintiffs assert three claims under § 1962(c) of the Racketeering Influenced and Corrupt Organizations ("RICO") Act.  Under this provision, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).  In order to state a valid RICO claim under § 1962(c), a plaintiff must allege "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Jarvis v. Regan*, 833 F.2d 149, 151-52 (9th Cir. 1987) (citations omitted).  "Racketeering activity" is any act indictable under several provisions of Title 18 of the United States Code.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  The Ninth Circuit has interpreted this rule to require pleadings to specify "the time, place, and nature of the alleged fraudulent activities."

*Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) (quoting *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124 (9th Cir.2009)).

Plaintiffs' first three causes of action allege a RICO violation, a conspiracy to violate RICO, and aiding and abetting a RICO violation, all stemming from defendants' allegedly fraudulent loan practices. Defendants argue that plaintiffs' RICO claims are barred by the statute of limitations. They also argue that plaintiffs have failed to and cannot allege facts sufficient to establish (1) the predicate acts of mail and wire fraud, and (2) that there has been a pattern of racketeering activity.

### A.     Statute of Limitations

The statute of limitations for a civil RICO action is four years. *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987). This limitations period "begins to run when a plaintiff knows or should know of the injury which is the basis for the action." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 365 (9th Cir. 2005). A plaintiff has  constructive knowledge of a defendant's fraud when "it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud." *Pincay v. Andrews*, 238 F.3d 1106, 1110 (9th Cir. 2001).

The Construction Note Addendum, which changed the initial interest rate from 5.9% to 11.3%, was signed on July 17, 2007. This action was filed more than four years later on September 30, 2011. Defendants argue, therefore, that the RICO claims are barred by the statute of limitations.

Plaintiffs make three arguments in opposition. First, they argue that the operative contract for determining when the statute of limitations begins to run is not the original loan, but the ARM loan modification, which occurred two years later. They argue that because the ARM loan modification "represented that the original note term was 5.375%," it perpetuated the fraud of the original loan. However, all of plaintiffs' causes of action stem from the original loan, and therefor the statute of limitations began to run in July 2007. Furthermore, the plain terms of the contract state that the initial

United States District Court
For the Northern District of California

1    interest rate was "[s]ubject to the terms of the Construction Loan Note Addendum," which belies the

2    claim that the ARM perpetuated the fraud of the first mortgage.

3          Second, plaintiffs argue for equitable tolling under the doctrine of fraudulent concealment,

4    because plaintiffs could not have discovered the 11.3% interest rate until 2009 when they conducted a

5    forensic loan audit.  However, the plain terms of the contract state that "[t]he initial Interest Rate is

6    11.250%."  Although plaintiffs state that they did not learn the true interest rate until the loan audit, a

7    reasonably diligent investigation of the loan documents would have revealed the initial interest rate of

8    11.25%.

9          Third, plaintiffs in their opposition aver facts concerning an attorney's failure to provide

10   competent legal services, urging this failure as a further ground for equitable tolling.  However, these

11   facts were not alleged in the FAC, and so the Court cannot consider them in a 12(b)(6) motion.  Thus,

12   based on the facts alleged in the FAC, the Court finds that the RICO claims are barred by the statute of

13   limitations.

14

15        **B.**     **Predicate Acts of Mail and Wire Fraud**

16         Even if the RICO claims were not time-barred, the Court finds that there has been insufficient

17   pleading to allege the predicate acts required for a RICO claim.  In the FAC, plaintiffs argue that the

18   predicate acts for the RICO violation were mail and wire fraud, in violation of 18 U.S.C. § 1341.  FAC

19   ¶ 78.  Specifically, they allege that defendants "placed in post offices and/or in authorized repositories

20   matter and things to be sent or delivered by the Postal Service . . . including but not limited to

21   promotional materials, applications, agreements, manuals, and correspondence." *Id.* at ¶ 80.  They also

22   allege that defendants "transmitted and received by wire matter and things, including but not limited to

23   promotional materials, applications, agreements, manuals, and correspondence, and made or caused to

24   be made false statements over the telephone, electronic mail, and internet." *Id.* at ¶ 81.

25         Plaintiffs fail to allege the specific content of the "matter and things" transferred through the

26   mail and over wires, who made and received the matter and things, and when the transmissions

27   occurred.  Rule 9(b) requires particularity that plaintiffs have failed to provide.  They have not specified

28   "the time, place, and nature of the alleged fraudulent activities." *Moore*, 885 F.2d at 540.

United States District Court

For the Northern District of California

### C.     Pattern of Racketeering Activity

At minimum, there must be at least two acts of racketeering activity within ten years of one another to constitute a "pattern." 18 U.S.C. § 1961(5). However, a "'pattern' of racketeering activity also requires proof that the racketeering predicates are related and 'that they amount to or pose a threat of continued criminal activity.'" *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004) (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239(1989)).

Here, plaintiffs allege that the pattern of deceit is evident from the first loan that hid the true initial interest rate, from the undisclosed payment to Diablo Funding Inc., and from the ARM that continued to misrepresent the true initial interest rate. Opposition 13. However, the initial interest rate of the loan is apparent from the clear terms of the Construction Note Addendum, and that rate is also clearly referenced in the ARM modification. Additionally, plaintiffs have failed to allege that Diablo Funding Inc. had a duty to disclose their payment to the Cabreras, or that they could not have discovered this payment with reasonable diligence. Furthermore, plaintiffs fail to allege facts that would show that the interest rate "misrepresentation" poses a threat of continued criminal activity.

Therefore, the Court GRANTS WITH LEAVE TO AMEND defendants' motion to dismiss plaintiffs' RICO claims.

### 2.     ECOA Claim

Plaintiffs' fifth cause of action alleges that defendants violated the Equal Credit Opportunity Act ("ECOA"). ECOA makes it unlawful "for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract)." 15 U.S.C. § 1691(a). Plaintiffs allege that they are Hispanic, and that non-Hispanic white borrowers similarly situated would have received a more favorable loan. FAC ¶¶ 127-29. Defendants moved to dismiss this claim because it is barred by the statute of limitations and because plaintiffs fail to state a claim.

### A.     Statute of Limitations

ECOA provides a two-year statute of limitations from the date of the violation. 15 U.S.C.

6

§ 1691e(f) (2007).[2]  But ECOA allows for the applicant to have an additional year to file a claim after the commencement of an enforcement proceeding by either an agency or the Attorney General, if the enforcement proceeding is commenced within two years of the date of the violation.  *Id.*

Defendants argue that plaintiffs' ECOA claim is barred by the statute of limitations because it was brought more than two years after the initial loan was signed in July 2007.  Even if the exception applied, that would still at maximum create a three-year statute of limitations, which is exceeded in this case.

Plaintiffs argue that the ECOA claim is not barred by the statute of limitations because Countrywide agreed to a suspension of the statute of limitations for ECOA violations in an agreement with the United States.  Oppo. 12.  They argue that this agreement allows them to make an ECOA claim because they filed their suit within one year of the Department of Justice enforcement action.  However, plaintiffs fail to allege these facts in the FAC, and only assert them in their Opposition.  Thus, based on the facts of the FAC, the Court finds that the ECOA claim is barred by the statute of limitations.

### B.     Failure to State a Claim

Even if the ECOA claim were not barred by the statute of limitations, defendants argue that plaintiffs fail to state a claim under ECOA.  Plaintiffs argue that a similarly situated white borrower would have received a more favorable loan than they did, because they are Hispanic.  To support the allegation, they offer statistical evidence showing that Hispanics were given worse loans than white borrowers with the same borrower risk, and that Hispanic borrowers, otherwise qualified for prime loans, were steered into subprime loans at rates between 2.6 and 3.5 times higher than similarly situated white borrowers.  FAC ¶¶ 98-99.  However, the Cabreras fail to allege that they themselves were qualified for a prime loan or better loan terms than the ones that they received.  Thus, plaintiffs fail to state a claim that defendants gave them a subprime loan because they are Hispanic in violation of ECOA.

Therefore, the Court GRANTS WITH LEAVE TO AMEND defendants' motion to dismiss

---

[2]The statute was revised in 2010, the 2007 provisions are operative in this case.

plaintiffs' ECOA claim.

### 3.     California's Unfair Competition Law Claim

Plaintiffs' fourth cause of action alleges that defendants violated California's Unfair Competition Law ("UCL"), which prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  Plaintiffs allege that defendants acted unlawfully by violating RICO, ECOA, and  California Civil Code § 2923.5; they acted unfairly by foreclosing on a home with a pending loan modification; and they acted fraudulently by making "misleading representations to borrowers." Oppo. ¶¶ 120-26.

Defendants move to dismiss the UCL claim on the following grounds: (1) the UCL claim is barred by the statute of limitations; (2) the predicate unlawful act of violating RICO is flawed because plaintiffs failed to state a claim under RICO; (3) the predicate unlawful act of violating ECOA is flawed because plaintiffs failed to state a claim under ECOA, and ECOA bars pursuit of a separate state law remedy; (4) the predicate unlawful act of violating California Civil Code § 2923.5 is flawed because plaintiffs fail to state a claim; (5) public policy at the time of foreclosure did not prohibit a foreclosure with a pending modification; and (6) plaintiffs fail to plead with particularity any fraudulent or false statements.

### A.     Statute of Limitations

The statute of limitations for a Section 17200 claim is four years.  Cal. Bus. & Prof. Code § 17208.  Defendants argue that the UCL claims based on the original loan, which was executed  more than four years before this action was filed, are barred by the statute of limitations.  Plaintiffs argue that under the equitable tolling doctrine, they did not and could not have discovered the violations until 2009.  The Court has already addressed and rejected this argument.  *See supra* Section I.A.

Additionally, plaintiffs argue that the delayed discovery rule applies to UCL claims.  The Ninth Circuit has previously held that the statute of limitations for UCL claims runs on the date of the violation and not the date of discovery.  *See In Karl Storz Endoscopy–Am., Inc. v. Surgical Tech., Inc.*, 285 F.3d 848, 857 (9th Cir.2002).  The California Court of Appeal subsequently disagreed in *Broberg v.*

*Guardian Life Ins. Co. of Am.*, 171 Cal. App. 4th 912, 920–21, 90 Cal. Rptr.3d 225, *review denied* (2009). *But see Snapp & Assocs. Ins. Servs., Inc. v. Robertson*, 96 Cal. App. 4th 884, 891 (Cal. Ct. App. 2002) (delayed discovery rule does not apply to UCL causes of action). The California Supreme Court has not decided the issue.

Even assuming that the delayed discovery rule applies to UCL claims, plaintiffs fail to plead adequate facts to avail themselves of the delayed discovery rule. A plaintiff seeking to take advantage of the delayed discovery rule must "specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand demurrer." *E-Fab, Inc. v. Accountants, Inc. Services*, 153 Cal. App. 4th 1308, 1319 (2007) (quoting *McKelvey v. Boeing North American, Inc.*, 74 Cal. App. 4th 151, 160 (1999)). Here, the face of the Construction Loan Note Addendum states that the initial interest rate for the loan is 11.250%. Plaintiffs allege that they did not discover this interest rate until they had a forensic loan audit in the fall of 2009. However, plaintiffs fail to allege sufficient facts to show that they were unable to discover the interest rate despite reasonable due diligence. Thus, the UCL claims based on the alleged misrepresentation in the initial loan are barred by the statute of limitations.

**B.    "Unlawful" Business Practices**

Plaintiffs allege that defendants violated the UCL by committing "unlawful" business practices through violations of RICO, ECOA, and California Civil Code § 2923.5. First, the RICO claim is based on the alleged misrepresentation in the initial loan, the undisclosed payment to Diablo Funding Inc., and the alleged continued misrepresentation of the initial loan on the ARM. As discussed *supra*, Part I, the RICO claim is barred by the statute of limitations and fails to adequately plead facts to support a claim.

Second, the ECOA claim is based on defendants allegedly discriminated against the Cabreras by offering them a subprime loan because they are Hispanic. As discussed *supra* Section II, the ECOA claim is barred by the statute of limitations and plaintiffs have failed to plead specific facts alleging an ECOA violation. Additionally, ECOA bars pursuit of state law claims if the plaintiff also pursues relief under ECOA. 15 U.S.C. § 1691d(e).

Finally, plaintiffs allege that "defendants did not comply with Cal. Civ. Code § 2923.5's due diligence requirement with respect to loan modification." FAC ¶ 124. Section 2923.5 requires a mortgage lender to exert "due diligence" in attempting to contact the borrower before filing a notice of default. Cal. Civ. Code § 2923.5(g). Plaintiffs fail to allege any facts required to make a claim under § 2923.5. They do not allege whether they were served a notice of default or how defendants failed to properly attempt to contact them. Moreover, § 2923.5 applies to default notices instead of loan modifications, as alleged in the FAC. Thus, plaintiffs have failed to plead a claim of "unlawful" business practices under the URL.

### C.      "Unfair" Foreclosure

An "unfair" business practice under the UCL is "one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008). However, "the public policy which is a predicate to the action must be 'tethered' to specific constitutional, statutory or regulatory provisions." *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002).

Plaintiffs allege that defendants unfairly executed a foreclosure on their home when they had a loan modification application pending. FAC ¶ 126. They argue that this violates public policy, as reflected in the Homeowner Bill of Rights, which prohibits foreclosures while a modification is pending. Cal. Code Civ. Pro. § 2924.11. Defendants argue that because this law was only signed in 2012, it cannot be used to show that there was a public policy against this practice at the time of the Cabreras' home foreclosure in 2011. Plaintiffs argue that, although the public policy was not codified until 2012, it certainly existed in 2011 as part the general public policy against foreclosures that were occurring without giving homeowners adequate opportunities to correct their deficiencies. *See, e.g.*, Cal. Civ. Code § 2923.5. Plaintiffs have sufficiently pled enough facts to make a claim of "unfair" business acts under § 17200 that is plausible on its face.

### D.      "Fraudulent" Mortgage Loan Scheme

Finally, plaintiffs allege that defendants engaged in "fraudulent" business acts through a

fraudulent mortgage loan scheme that misled the Cabreras and other borrowers into accepting loans that they could not afford. But plaintiffs fail to allege specific acts of fraud or misstatement that induced other homeowners into accepting loans they could not afford. Regarding their own mortgage, plaintiffs allege that defendants misled them because they did not know that the initial interest rate was 11.250%, and they were misled into believing that the initial interest rate was 5.875%. However, the 11.250% interest rate was on the face of the Construction Loan Addendum, and so plaintiffs cannot claim that they were defrauded by defendants. Additionally, the "fraudulent" loan claim cannot support a UCL violation because it is barred by the UCL statute of limitations.

Thus, although plaintiffs fail to allege adequate facts to show that there were "unlawful" or "fraudulent" business practices in violation of the UCL, they have alleged adequate facts to make a claim that defendants engaged in "unfair" business practices. Therefore, defendants' motion to dismiss plaintiffs' UCL claim is GRANTED WITH LEAVE TO AMEND as to "unlawful" and "fraudulent" business practice claims, it is DENIED as to the "unfair" business practices claim.

**4.      Standing of Plaintiff Mila Cabrera**

Defendants also move to dismiss Mila Cabrera as a plaintiff on the grounds that she lacks standing, because only Manuel Cabrera was a signatory to the initial mortgage. Plaintiffs assert that Mila Cabrera has standing because she has community property rights in the home, even though she is not a party to the mortgage contract. However, the Ninth Circuit does not allow community property rights to create standing when the spouse is not a signatory to the contract at issue. *Bianchi v. Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 69260, at *5 (S.D. Cal. May 17, 2012) (holding that a wife did not have standing to sue for fraud when she did not sign the mortgage loan, because "'the presumption under California law that property acquired during marriage is community property does not apply' in circumstances 'where a spouse acquires property in his name alone.'") (citing *In re Jacobson*, 676 F.3d 1193, 1201 (9th Cir. 2012)). Plaintiffs fail to cite any cases that support their position.

Accordingly, defendants' motion to dismiss plaintiff Mila Cabrera is GRANTED. As plaintiff has not argued that it can allege any facts to support Mila Cabrera's standing, she is DISMISSED WITH PREJUDICE.

**5.      Dismissing Defendants**

In addition to the grounds for dismissal of the claims discussed above, defendants Countrywide Financial, Countrywide Bank, and Bank of America argue that they should be dismissed from the suit because the complaint makes no allegations against them.  Plaintiffs failed to respond to this argument in their Opposition.   Thus, defendants' motion to dismiss defendants Countrywide Financial, Countrywide Bank, and Bank of America is GRANTED and they are DISMISSED WITHOUT PREJUDICE.  As plaintiffs must allege facts to support a claim against these particular defendants in their next amended complaint.

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss plaintiffs' claims is GRANTED in part WITH LEAVE TO AMEND and DENIED in part.  Plaintiff Mila Cabrera is DISMISSED WITH PREJUDICE. The Court DISMISSES WITHOUT PREJUDICE defendants Countrywide Financial, Countrywide Bank, and Bank of America.  **Any amended complaint must be filed no later than November 16, 2012.  The Initial Case Management Conference is continued to January 18, 2013 at 2:30 p.m.**

**IT IS SO ORDERED.**

Dated: October 30, 2012                                    _____
                                                          SUSAN ILLSTON
                                                          United States District Judge