United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MANUEL CABRERA, individually and on behalf of the general public,

   Plaintiffs,

 v.

COUNTRYWIDE HOME LOANS INC., et al,

   Defendants.
            /

No. C 11-4869 SI

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

On February 22, 2013, the Court held a hearing on defendants' motion to dismiss plaintiffs' Second Amended Complaint. Having considered the parties' arguments, and for good cause appearing, the Court hereby GRANTS IN PART and DENIES IN PART defendants' motion to dismiss, for the reasons set forth below.

**BACKGROUND**

In July 2007, Manuel Cabrera received an adjustable rate home mortgage loan for approximately $1,800,000 from Countrywide Home Loans, Inc., dba America's Wholesale Lender ("Countrywide"). Second Amended Complaint ("SAC"), at 1. At the time Cabrera obtained his loan, he had a credit score between 650 and 710. *Id.* at ¶ 35. Cabrera contends that a borrower with a credit score of 620 or better is generally considered to be qualified for a prime loan, yet Countrywide steered him and other Hispanics into obtaining subprime loans with higher interest rates in order to maximize Countrywide's profitability. *Id.* at ¶¶ 14, 35, 37.

To incentivize brokers to steer borrowers otherwise qualified for prime loans into obtaining subprime loans, Countrywide employed a systematic scheme that paid brokers a bounty in the form of Yield Spread Premiums ("YSPs") each time they issued a subprime loan. *Id.* at ¶¶ 14, 28. Cabrera alleges that Countrywide paid Diablo Funding Inc., the originator of Cabrera's subprime loan, a bounty in the form of YSPs that was not disclosed to Cabrera. *Id.* at ¶ 37.

On June 30, 2011, BAC Home Loan Servicing LP f/k/a Countrywide Home Loans Servicing LP ("BAC") executed a foreclosure on Cabrera's home. *Id.* at 1. At the time of the foreclosure, Cabrera had a loan modification pending. *Id.* at ¶ 89.

In December 2011, upon a referral from the Federal Reserve Board, which had conducted an investigation and determined that Countrywide had violated a prohibition in the Equal Credit Opportunity Act ("ECOA") against discriminatory lending, the United States Department of Justice ("DOJ") commenced a separate enforcement proceeding against Countrywide. *Id.* at ¶¶ 78-79. As part of a settlement with the DOJ in that action, Countrywide agreed to toll the statute of limitations from March 2007 through December 2011 for any cause of action arising from review and examination determinations by the Federal Reserve Board regarding the ECOA violations. *Id.*

On September 30, 2011, the Cabreras filed this lawsuit.[1] The Cabreras then filed a FAC, alleging five counts of predatory lending practices in violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*, ECOA, 15 U.S.C. §§ 1691, *et seq.*, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq. See* FAC, at 1-2. On October 30, 2012, the Court granted in part, and denied in part, defendants' motion to dismiss the FAC, but afforded leave to amend. Dismissal Order, at 12. Specifically, the Court held that the UCL "unfair foreclosure" claim was sufficiently pled, but the Court dismissed all other claims. *See* Dismissal Order, at 10, 12. The Court provided specific guidance on how the FAC was defective, and identified the types of facts that needed to be alleged in order to adequately state claims for relief.

---

[1] Mila Cabrera, Manuel Cabrera's wife, was dismissed as a plaintiff from this action with prejudice for lack of standing in the Court's first order dismissing in part plaintiff's First Amended Complaint ("FAC"). Order Granting in Part and Denying in Part Defs.' Mot. to Dismiss Pls.'s First Amended Compl. ("Dismissal Order"), at 11.

2

On November 28, 2012, Manuel Cabrera filed a Second Amended Complaint ("SAC"). In it, he has abandoned three of the five claims from the FAC, but has re-alleged the ECOA and UCL claims. In particular, Cabrera has alleged: (1) a disparate impact claim under ECOA; and (2) several UCL claims, predicated upon alleged "unlawful" acts in violation of ECOA and California Civil Code § 2923.5, as well as a fraudulent concealment claim and the same "unfair" foreclosure claim asserted in the FAC, although it is now asserted against defendant BAC, an operating subsidiary of Bank of America Corp. ("Bank of America") at the time of the foreclosure,[2] and not against Countrywide.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by

---

[2] In July 2011, BAC merged into Bank of America.

3

1 the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**1.  ECOA Claim**

The Equal Credit Opportunity Act ("ECOA") makes it unlawful "for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract)." 15 U.S.C. § 1691(a).

The FAC alleged a disparate treatment theory under ECOA, asserting that a non-Hispanic white borrower similarly situated to the Cabreras would have received a more favorable loan than the Cabreras received from defendants. *See* FAC ¶ 129. Cabrera no longer includes that claim. Instead, he now alleges in the SAC a disparate impact theory under ECOA. Specifically, Cabrera asserts that defendants discriminated against Hispanics, including himself, by engaging in a "systematic scheme that paid brokers a bounty in the form of Yield Spread Premiums in order to incentivize brokers to steer borrowers into subprime mortgages and loans," despite the fact that some borrowers, including Cabrera, were qualified to receive prime loans. *See* SAC ¶¶ 13, 91, 93. Defendants move to dismiss this claim because (1) it is barred by the statute of limitations, and (2) the allegations in the SAC fail to state a claim.

**A.  Statute of Limitations**

ECOA provides a two year statute of limitations from the date of the violation. 15 U.S.C. § 1691e(f) (2007). It allows, however, for an applicant to have an additional year to file a claim after the commencement of an enforcement proceeding by either a government agency or the Attorney General, if the enforcement proceeding is commenced within two years of the date of the violation. *Id.* In its first Dismissal Order, the Court found that Cabrera's ECOA claim was barred by the two year statute of limitations, but granted leave to amend. Dismissal Order, at 7.

4

Cabrera asserts three primary arguments for why his ECOA claim is no longer time-barred. For the reasons set forth below, the Court concludes that the SAC, like the FAC, has failed to state a timely ECOA claim.

First, Cabrera alleges that because his ECOA claim is predicated upon a disparate impact theory of discrimination against a class of Hispanics, it is subject to the "continuing violations" doctrine, which considers the last occurrence of an unlawful practice to be the time at which the statute of limitations period begins to run. Cabrera argues, without factual support in the SAC, that the unlawful discrimination as against other unidentified members of the putative class continued through the date he filed his opposition, and therefore the ECOA claim is not time-barred. Opp'n (Dkt. 48), at 9.

The Court rejects the application of the continuing violations doctrine to the facts of this case for two reasons. First, Cabrera relies heavily on *Ramirez v. GreenPoint Mortgage Funding, Inc.*, 633 F. Supp. 2d 922 (N.D. Cal. 2008), to support his argument that the doctrine is applicable, but his reliance is misplaced. In *Ramirez*, Judge Henderson applied the continuing violations doctrine to save an otherwise time-barred ECOA claim when one of the two plaintiffs had already alleged a separate timely ECOA claim. *Ramirez*, 633 F. Supp. 2d at 929. In applying *Ramirez* to facts similar to those here, the Maryland district court noted that *Ramirez* involved a situation "where at least one of the unlawful actions allegedly occurred inside the limitations period, and this fact was critical to the court's decision to apply the continuing violations doctrine." *Porter v. GreenPoint Mortg. Funding, Inc.*, 2011 WL 6837703, *5 (D. Md. Dec. 28, 2011). Here, because Cabrera has not adequately alleged a single violation within the two year statutory period, he cannot rely on this doctrine to justify his untimely ECOA claim.

Second, even if the Court accepted the application of the doctrine here, the SAC alleges general violations against other unidentified members of the putative class only through December 2008, and therefore the doctrine would not save Cabrera's ECOA claim from being time-barred. *See* SAC ¶ 82; Opp'n, at 9. Moreover, because this case has not yet been certified as a class, Cabrera cannot avoid the application of ECOA's two year limitations period by simply denominating this as a class action, then baldly asserting that other unidentified putative class members may have timely ECOA claims. To

5

allow such a maneuver would encourage a plaintiff with a time-barred ECOA claim to circumvent the limitations period by simply asserting the claim as a putative class action. The Court declines to do so.

Next, Cabrera argues that the ECOA claim is subject to the statute's 2010 amendments, which extend the statute of limitations period from two to five years. This argument wholly disregards the Court's first Dismissal Order, which held that while "[ECOA] was revised in 2010, the 2007 provisions are operative in this case" because the originating discriminatory conduct against Cabrera occurred in July 2007. *See* Dismissal Order, at 7 n. 2. Although the Court was not presented with the continuing violations theory now asserted in Cabrera's Opposition, the Court again finds that Cabrera has only plausibly alleged unlawful discriminatory lending as against him in July 2007, and the Court has rejected the application of the continuing violations doctrine to the facts of this case. Therefore, to apply the 2010 ECOA amendments would serve to "revive a stale claim," which the Ninth Circuit has determined would lead to a "manifest injustice," and has accordingly not permitted. *See Chenault v. U.S. Postal Serv.*, 37 F.3d 535, 538-39 (9th Cir. 1994) (citing *Davis v. Valley Distrib. Co.*, 522 F.2d 827, 830 (9th Cir. 1975) for the proposition that "[i]t is the general rule that subsequent extensions of a statutory limitation period will not revive a claim previously barred."). Accordingly, the Court holds that the 2007 provisions of ECOA are operative in this case, thereby rendering Cabrera's ECOA claim time-barred.

Additionally, Cabrera argues that the ECOA claim is not time-barred because ECOA allows for a plaintiff to bring an ECOA claim within one year of the commencement of a government action, and the DOJ brought a government action against Countrywide in December 2011. The Court made clear in its first dismissal order that ECOA provides a two year limitations period which can be extended by up to one year only if the government commences an enforcement proceeding within two years from the date of the initial violation. *See* Dismissal Order, at 7. Therefore, the maximum limitations period with which Cabrera could allege an ECOA claim here is three years. Cabrera filed this lawsuit more than four years after the date of the initial violation in July 2007, and has provided the Court with no reason to depart from the unambiguous plain reading of the statute.

Finally, Cabrera alleges that through a series of tolling agreements with the DOJ, Countrywide agreed to suspend the statute of limitations from March 2007 through December 2011 for any cause of

action arising from the referral by the Federal Reserve Board to the DOJ regarding Countrywide's ECOA violations. *See* SAC ¶¶ 78-79. After requesting supplemental briefing from the parties on this issue, and reviewing the agreements themselves, the Court finds that the agreements do not serve to toll Cabrera's claim, and therefore do not save his ECOA claim from being time-barred. The agreements provide that "[t]he parties agree to a suspension of the running of any applicable statute of limitations for any cause of action that could be brought against Countrywide . . . by the Department of Justice . . . to provide the Department of Justice a full opportunity to determine whether any such action against Countrywide may be warranted." *See* Defs.'s Supp. Br. (Dkt. 53), Exs. A and B. Thus, the agreements entered into by Countrywide with the DOJ operate, by their express terms, only to toll the limitations period for ECOA claims that could have been brought by the DOJ itself. The agreements do not serve to toll the statutory period for private causes of action, including Cabrera's.[3] Accordingly, the express agreement to toll the statute of limitations period does not save Cabrera's ECOA claim from being untimely.

In his supplemental brief, Cabrera argues for the first time that the Court should equitably toll the two year statute of limitations on his ECOA claim because Cabrera had no way of knowing he had been a victim of discriminatory lending practices and of Countrywide's use of YSPs to incentivize brokers to issue subprime loans until the DOJ commenced its investigation into Countrywide's practices and filed a complaint in December 2011. But Cabrera failed to allege facts in the SAC to show that he could not have discovered the alleged violations despite his exercise of reasonable diligence. *See Appling v. Wachovia Mortg., FSB*, 745 F. Supp. 2d 961, 969 (N.D. Cal. 2010) ("[I]f plaintiff fails to allege facts demonstrating that he could not have discovered the alleged violations by exercising reasonable diligence, dismissal is appropriate.") (internal citations and quotations omitted). Accordingly, based on the facts alleged in the SAC, the Court rejects the application of the equitable tolling doctrine.

---

[3] In his supplemental brief, Cabrera argues that ECOA's legislative history supports an interpretation that the one year statutory extension applies regardless of when the government initiates its enforcement proceeding. The Court finds this argument without merit, and notes that because the plain language of the statute is unambiguous, the Court need not look beyond the language of the statute itself. *See Close v. Thomas*, 653 F.3d 970, 974 (9th Cir. 2011) ("[I]f the plain meaning of the statute is unambiguous, that meaning is controlling).

7

### B.     Failure to State a Claim

Defendants also argue that, even if the ECOA claim were not barred by the statute of limitations, Cabrera has failed to state a claim under ECOA. In the FAC, Cabrera alleged an ECOA claim premised on a disparate treatment theory. *See* FAC ¶ 129. The Court dismissed the claim, finding that Cabrera had failed to state a claim because he had not alleged that he was "qualified for a prime loan or better loan terms than the one [he] received." Dismissal Order, at 7. In the SAC, Cabrera has altered the theory underlying his ECOA claim, now premising it on disparate impact. *See* SAC ¶¶ 16, 18, 28, 40, 83, 91.

To prevail on a disparate impact claim under ECOA, Cabrera must show "a significant disparate impact on a protected class caused by a specific, identified . . . practice or selection criterion." *Ramirez*, 633 F. Supp. 2d at 927 (quoting *Stout v. Potter*, 276 F.3d 1118, 1121 (9th Cir. 2002)).

The basis for Cabrera's disparate impact ECOA claim is unclear from the complaint, and Cabrera failed to adequately articulate the claim at the hearing on February 22, 2013. The crux of his claim, however, appears to be that "[b]ecause consumers generally do not understand the yield spread premium mechanism, they are unable to engage in effective negotiation. Instead they are more likely to rely on the loan originator's advice, and, as a result, may receive a higher rate or other unfavorable terms solely because of greater originator compensation . . . ." SAC ¶ 17. Additionally, Cabrera alleges that on a nationwide basis between January 2004 and August 2007, "Hispanics who qualified for a Countrywide home mortgage loan and who obtained wholesale loans from Countrywide had odds between approximately 2.6 and 3.5 times higher than similarly-situated non-Hispanic White borrowers of receiving a subprime loan instead of a prime loan . . . ." *Id.* at ¶ 83.

However, Cabrera has failed to adequately articulate, either in the SAC or at the February 22, 2013 hearing, the specific policy or practice that has a disparate impact on Hispanics, and has failed to

8

identify sufficient facts to establish that the use of the YSPs contributed to any alleged disparate impact.[4] Therefore, granting leave to amend would be futile.

Accordingly, the Court GRANTS defendants' motion to dismiss the ECOA claim, and the claim is DISMISSED WITH PREJUDICE.

**2.  California's Unfair Competition Law Claim**

Cabrera re-alleges in the SAC that defendants violated California's Unfair Competition Law ("UCL"), which prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 1700. First, he alleges that defendants engaged in the predicate "unlawful" act by violating ECOA and California Civil Code § 2923.5. Second, he alleges defendants acted unfairly by foreclosing on a home with a pending loan modification. Third, he alleges defendants acted fraudulently by making "misleading representations to borrowers."

**A.  "Unlawful" Business Practices**

Cabrera alleges that defendants violated the UCL by committing "unlawful" business practices by violating ECOA and California Civil Code § 2923.5.

First, as the Court noted in its first Dismissal Order, ECOA bars pursuit of state law claims if the plaintiff also pursues relief under ECOA itself. *See* 15 U.S.C. § 1691d(e); Dismissal Order, at 9-10. Accordingly, because Cabrera has brought an independent ECOA claim, he is barred as a matter of law from bringing a UCL claim predicated on an underlying ECOA claim.

Second, Cabrera alleges that defendants "did not comply with section 2923.5's due diligence requirement with respect to loan modification . . . ." SAC ¶ 88. The Court rejected this identical argument in its first Dismissal Order, noting that Cabrera "d[id] not allege whether they were served a

---

[4] Even if Cabrera were to revert back to a disparate treatment theory under ECOA, he has failed to correct the deficiency in the FAC. In the SAC, Cabrera has alleged that he had a credit score between 650 and 710 at the time he obtained his loan, and that a borrower with a credit score of 620 or better is generally considered to be qualified to obtain a prime loan. SAC ¶ 35. He has not shown, however, that his credit score alone, without consideration of other factors, would make him eligible to receive a loan of $1,800,000. Indeed, Cabrera's counsel acknowledged at oral argument that Cabrera got a "bigger loan than he should have," and the SAC alleges that the Cabrera's joint annual income was "about $100,000." Such an income clearly would not support a $1,800,000 loan.

9

notice of default or how defendants failed to properly attempt to contact them," both of which are required to make out a section 2923.5 claim. *See* Dismissal Order, at 10. Cabrera has made no attempt to address the deficiencies previously identified by the Court, and has therefore failed to amend his complaint to state a UCL claim predicated upon section 2923.5.

Accordingly, the Court GRANTS defendants' motion to dismiss Cabrera's UCL claims predicated on ECOA and section 2923.5, and the claims are DISMISSED WITH PREJUDICE.

### B.     "Unfair" Foreclosure Claim

In the FAC, Cabrera asserted a UCL claim against defendants for unfairly executing a foreclosure on the Cabreras' home in June 2011 when they had a pending loan modification. FAC ¶ 126. The Court held that the unfair foreclosure claim was adequately pled against Countrywide, because it did not violate the statute of limitations and the unfair action was "tethered" to a specific statutory regulation that forbids the foreclosure of a home with a pending modification application, California Civil Code § 2924.11. *See* Dismissal Order, at 10. Cabrera has reasserted this same unfair foreclosure claim in the SAC, although he now asserts it against BAC, and not Countrywide. SAC ¶¶ 10, 89; *see also* Opp'n, at 12.

Defendants move to dismiss, arguing that an unfair foreclosure claim against BAC, which was an operating subsidiary of federally chartered Bank of America at the time of the foreclosure, is preempted by the National Bank Act ("NBA"). Specifically, defendants contend that the NBA preempts state law regarding claims against national banks, including Bank of America and its subsidiaries, relating to "servicing" mortgages. *See* 12 C.F.R. § 34.4(a)(10). Since defendants contend that Cabrera's claim stems from BAC's improper servicing of his loan by failing to resolve the pending modification prior to foreclosure, defendants conclude therefore that the NBA expressly preempts his state law claim.

The NBA "vests national banks . . . with authority to exercise 'all such incidental powers as shall be necessary to carry on the business of banking.'" *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 554-55 (9th Cir. 2010) (quoting 12 U.S.C. § 24 (seventh)). Real estate lending, of the type at issue in this case, is expressly designated as part of the business of banking. *See id.* at 555 (citing 12 U.S.C. § 371(a)). Operating subsidiaries of national banks are treated as equivalent to national banks

10

themselves with respect to the powers exercised under federal law. *See Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 17 (2007). Because BAC was an operating subsidiary of Bank of America at the time of the foreclosure, it is afforded the same protections under the NBA as Bank of America itself.

Federally chartered banks are subject to state laws of general application in their daily business only to the extent such laws do not conflict with the letter or the general purposes of the NBA. *Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1037 (9th Cir. 2008) (quoting *Watters*, 550 U.S. at 11). Therefore, courts analyze whether there is conflict preemption, not field preemption.

Defendants cite to several cases holding that state law foreclosure claims are preempted by the Home Owners' Loan Act ("HOLA"), and argue that because of similar provisions in the NBA, the NBA also preempts these claims. However, the analogy between the NBA and HOLA is flawed, because HOLA contains a broad field preemption clause, while the NBA contains only a conflict preemption clause. *Tamburri v. Suntrust Mortg., Inc.*, 875 F. Supp. 2d 1009, 1016-17 (N.D. Cal. 2012) (distinguishing *Acosta v. Wells Fargo Bank, N.A.*, C 10–9910JF (PVT), 2010 WL 2077209 (N.D. Cal. May 21, 2010), and providing an in-depth analysis of the distinction between HOLA and NBA preemption); *see also Aguayo v. U.S. Bank*, 653 F.3d 912, 922 (9th Cir.2011) (finding that the NBA differs from HOLA because it has a conflict preemption analysis, not a field preemption analysis).

Under NBA conflict preemption, Cabrera's unfair foreclosure claim does not impose any constraints on lending or servicing powers. Rather, it "only incidentally affect[s] the exercise of national banks' real estate lending powers" by requiring certain procedural hurdles before a bank may foreclose on real property–wait until the pending modification application is completed. *See* 12 C.F.R. § 34.4(b) (exempting from NBA preemption any state laws that incidentally affect banks and concern, *inter alia*, contracts, torts, rights to collect debts, or acquisition and transfer of real property); *Tamburri*, 875 F. Supp. 2d at 1020-21 (finding that Cal. Civ. Code § 2923.5 can only result in a delay in foreclosure and therefore is not preempted by the NBA). "State laws of general application, which merely require all businesses (including national banks) to refrain from fraudulent, unfair, or illegal behavior, do not necessarily impair a bank's ability to exercise its [federally-authorized] powers." *Martinez*, 598 F.3d at 555. Therefore, the Court finds that Cabrera's unfair foreclosure claim is not

preempted by the NBA because it merely delays the foreclosure of real property, and does not impair defendants' ability to exercise its federally-authorized powers transfer property.

Accordingly, defendants' motion to dismiss the unfair foreclosure claim is DENIED.

### C. "Fraudulent" Concealment of Mortgage Loan Scheme

Cabrera alleges once again, verbatim, that defendants engaged in "fraudulent" business acts through a fraudulent mortgage loan scheme that misled him and other borrowers into accepting loans they could not afford. *Compare* FAC ¶¶ 92-94, *with* SAC ¶¶ 75-77. Because Cabrera has made no new factual or legal contentions, the Court reiterates its prior holding, and finds that Cabrera has failed to state a claim that defendants engaged in "fraudulent" business practices.

Moreover, this claim, which stems from illegalities that occurred during the origination of the loan in July 2007, is also barred by the UCL's four year statute of limitations. *See* Cal. Bus. & Prof. Code § 17200. In its Dismissal Order, the Court rejected Cabrera's argument that the equitable tolling doctrine saves the claim because Cabrera could not have discovered the violation until 2009. *See* Dismissal Order, at 8-9. Cabrera has not reasserted an equitable tolling argument, nor has he proffered any justification as to why this claim is now timely.

Accordingly, defendant's motion to dismiss plaintiff's "fraudulent concealment" claim under the UCL is GRANTED, and the claim is DISMISSED WITH PREJUDICE.

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss Cabrera's Second Amended Complaint is GRANTED IN PART and DENIED IN PART.

**IT IS SO ORDERED.**

Dated: April 2, 2013

SUSAN ILLSTON
United States District Judge